IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                        CRIMINAL ACTION NO. 2:22-cr-00098

KELVIN BRADLEY,

        Defendant.


**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Bruen-Based Motion to Dismiss* (Document 29) and the *Response of the United States in Opposition to Defendant's Motion to Dismiss* (Document 33). For the reasons stated herein, the Court finds that the motion to dismiss should be denied.

The Court also has reviewed the pro se *Defendant's Motion to Dismiss Charges of Felon in Possession and Possession of a Firearm with an Obligated Serial Number* (Document 6) and the *Memorandum of Law in Support of Defendant's Motion to Dismiss the Charges of Felon in Possession and Possession of a Firearm with an Obligated Serial Number* (Document 7). The Court finds that this motion should be withdrawn or refiled.

**FACTS AND PROCEDURAL HISTORY**

On May 3, 2022, a two-count *Indictment* (Document 1) was returned against the Defendant Kelvin Bradley. Count One charges the Defendant with possession of a firearm by a person previously convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

1

Specifically, the Indictment alleges that he had previously been convicted of aggravated stalking, in violation of Mich. Comp. Law. § 750.411, and despite his prior felony conviction, on or about December 19, 2020, possessed a Colt, .38 Special revolver.

Count Two charges that the manufacturer's serial number on the same Colt, .38 Special revolver, possessed by the Defendant on December 19, 2020, had been removed, obliterated, and altered, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B).

After appointment of counsel, the Defendant moved to dismiss both charges contained in the Indictment on the grounds that they are unconstitutional under the Supreme Court decision of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

## DISCUSSION ON *BRUEN*-BASED MOTION

The Supreme Court in *Bruen* rejected the means-end scrutiny analysis that courts had used in the wake of *D.C. v. Heller*, 554 U.S. 570, 634 (2008). 142 S. Ct. 2111 (2022); s*ee, e.g.*, *U.S. v. Chapman,* 666 F.3d 220, 225 (4th Cir. 2012); *U.S. v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). Rather, "[i]n keeping with *Heller*," *Bruen* clarified the two-step analysis in the Second Amendment context. *Bruen* at 2126. The initial question for the court's consideration is whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2129–30. Otherwise stated, the question is whether the regulation infringes on or burdens the Second Amendment right to possess and carry firearms for self-defense. *Id.* at 2133 (citing *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010)).

If Second Amendment rights are burdened, the Constitution presumptively protects that conduct, and the regulation can stand "[o]nly if a firearm regulation is consistent with this Nation's historical tradition." *Id.* at 2126. Sometimes, this "inquiry will be fairly straightforward,"

2

especially "when a challenged regulation addresses a general societal problem that has persisted since the 18th century." *Id.* at 2131. However, some regulations were "unimaginable at the founding" and require identifying relevantly similar regulations and "reasoning by analogy." *Id.* at 2132. Central to this consideration is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133.

The Defendant argues that both 18 U.S.C. §§ 922(g)(1) and 922(k) burden his Second Amendment rights and lack an appropriate historical analogue imposing a comparable burden, and therefore, both counts of the Indictment should be dismissed.

*A. 18 U.S.C. § 922(g)(1)*

Section 922(g)(1), in pertinent part, reads:

> It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). A number of district courts, including district courts from every circuit,[1] have rejected a post-*Bruen* challenge to the constitutionality of § 922(g)(1). *See, e.g.*, *U.S. v. Isaac*, 5:22-cr-117, 2023 WL 1415597, at *2 (N.D. Ala. Jan. 31, 2023); *U.S. v. Taylor*, 3:22-cr-22, 2023 WL 1423725, at *2 (E.D. Ky. Jan. 31, 2023); *U.S. v. Barber*, 4:20-cr-384, 2023 WL 1073667, at *11 (E.D. Tex. Jan. 27, 2023); *U.S. v. Brown*, CR-20-260-1, 2023 WL 424260, at *3 (E.D. Pa. Jan. 26, 2023); *Battles v. U.S.*, 4:23-cv-63, 2023 WL 346002, at *1 (E.D. Mo. Jan. 20, 2023); *U.S. v. Whittaker*, No. 1:22-cr-272, Dkt. No. 33 (D.D.C. Jan. 12, 2023); *U.S. v. Garrett*, 18-cr-880,

---

[1] With the exception of the Federal Circuit.

2023 WL 157961, at *2 (N.D. Ill. Jan. 11, 2023); *U.S. v. Moore*, 3:20-cr-474, 2023 WL 154588, at *2 (D. Or. Jan. 11, 2023); *U.S. v. Trinidad*, CR-21-398, 2022 WL 10067519, at *2 (D.P.R. Oct. 17, 2022); *U.S. v. Price*, 2:22-cr-97, 2022 WL 6968457, at *7 (S.D.W. Va. Oct. 12, 2022) (Goodwin, J.); *U.S. v. Teerlink*, 2:22-cr-24, 2022 WL 17093425, at *1 (D. Utah Nov. 21, 2022); *U.S. v. King*, 21-CR-255, 2022 WL 5240928, at *5 (S.D.N.Y. Oct. 6, 2022).[2]

Neither the Defendant nor the United States cites a single case that has invalidated § 922(g)(1) under *Bruen*'s framework. This Court has found no post-*Bruen* authority invalidating § 922(g)(1) and declines the opportunity to chart a new course. Additionally, judges within this District have previously held that § 922(g)(1) is constitutional in a post-*Bruen* world. *United States v. Tucker*, No. 2:22-cr-17, Dkt. No. 30, 2023 WL 205300 (S.D. W. Va. Jan. 17, 2023) (Goodwin, J.); *U.S. v. Price*, 2:22-cr-97, 2022 WL 6968457, at *7 (S.D.W. Va. Oct. 12, 2022) (Goodwin, J.). Given the number of well-reasoned and well supported decisions, addressing both text and historical tradition, the Court finds that § 922(g)(1) does not violate the Second Amendment of the United States Constitution.

A. *18 U.S.C. § 922(k)*

Section 922(k) states:

> It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

---

[2] Some courts have found that *Bruen* did not disrupt prior caselaw and held that Second Amendment rights only reach law-abiding citizens. *See, e.g.*, *Isaac*, 2023 WL 1415597, at *3–5; *Battles*, 2023 WL 346002 at *1; *Garrett*, 2023 WL 157961, at *2; *Moore*, 2023 WL 154588, at *2; *Trinidad*, 2022 WL 10067519, at *2; *King*, 2022 WL 5240928, at *5. Other courts have relied on the second prong of *Bruen* and, after examining founding-era regulations, have held that the Second Amendment does not preclude Congress' ability to disarm people that have been deemed a threat to public safety. *See, e.g.*, *Taylor*, 2023 WL 1423725, at *2; *Barber*, 2023 WL 1073667, at *6–8; *Brown*, 2023 WL 424260, at *3; *Price*, 2022 WL 6968457, at *7.

18 U.S.C. § 922(k). The Defendant argues that the Court should follow this Court's prior ruling in *United States v. Price*, where Judge Goodwin concluded that § 922(k) is unconstitutional post-*Bruen* because it burdens the Second Amendment right to possess a firearm and lacks a relevant historical analogue with a comparable burden. 2022 WL 6968457.

The United States urges the Court to follow the subsequent line of post-*Bruen* cases holding that § 922(k) is constitutional. *United States v. Serrano*, No. 3:21-cr-1590, 2023 WL 2297447, at *7-14 (S.D. Cal. Jan. 17, 2023); *United States v. Tita*, No. 1:21-cr-334, 2022 WL 17850250 (D. Md. Dec. 22, 2022); *United States v. Reyna*, No. 3:21-cr-41, 2022 WL 17714376 (N.D. Ind. Dec. 15, 2022); *United States v. Holton*, --- F. Supp. ----, 2022 WL 16701935, at *4-5 (N.D. Tex. Nov. 3, 2022). For the reasons stated below, the Court is persuaded by the reasoning offered in the subsequent line of cases.

1. *No Burdening of the Second Amendment*

The first question is whether § 922(k) regulates conduct protected by the Second Amendment. The Defendant argues that the Second Amendment's "text does not distinguish between bearing arms that have manufacturer's serial numbers and those which do not" and therefore § 922(k) presumptively burdens the Second Amendment. (Mot. at 10) (Document 29.) The United States counters that a serial number does not impact the functioning of a firearm or the ability to use a firearm for self-defense. (Gov. Resp. at 21) (Document 33.)

The Court finds that the plain text of the Second Amendment does not cover conduct regulated by § 922(k). The Second Amendment protects a citizen's right to possess firearms for self-defense and similar lawful purposes. A serial number does not alter the functionality of a

firearm and therefore a "person is just as capable of defending himself with a marked firearm as with an unmarked firearm." *Holton*, --- F. Supp. ----, 2022 WL 16701935, at *4.

The Second Amendment "is not a right to keep and carry any weapon whatsoever in any manner whatsoever." *Heller*, 554 U.S. at 626. It is when the regulation impacts the functional characteristics of a firearm that the Second Amendment is implicated. *Heller*, 554 U.S. at 629 (holding that a regulation banning possession of all handguns is unconstitutional because handguns have functional distinctions making them choice weapons for self-defense). Because § 922(k) regulates "a class of guns defined solely by a nonfunctional characteristic," the regulation is outside the scope or text of the Second Amendment. *Reyna*, 2022 WL 17714376 at *5. It would "make little sense to categorically protect a class of weapons bearing a certain characteristic wholly unrelated to their utility." *U.S. v. Marzzarella*, 614 F.3d 85, 94 (3d Cir. 2010).

     *2. Section 922(k) Is Comparably Burdensome to Relevant Historical Regulations*

Alternatively, even if one assumes that § 922(k) burdens the rights found under the Second Amendment, it is constitutional because there are relevant historical analogues that offer comparable burdens on the right to bear arms. The Defendant argues that the "manufacturer serial number requirement is anything but a longstanding firearm prohibition, and certainly not one that existed when the Second Amendment was ratified." (Mot. at 10.) The United States responds that although a "historical twin" does not exist, comparable burdens to the right to bear arms existed in the form of colonial-era regulations of the trade and sale of firearms.

The mass production of firearms and the corresponding advent of serial numbers are "circumstances beyond those the Founders specifically anticipated." *Bruen* at 2132. Largely, firearm manufacturers did not begin using serial numbers until the nineteenth century, and serial

numbers did not become more common until later.[3] It was not until the Gun Control Act of 1968 that manufacturers and importers were even required to mark firearms with serial numbers. Pub. L. No. 90-618, § 101, 82 Stat. 1213, 1223.

The stated purpose of the Gun Control Act of 1968 "is to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence." *Id.* § 101. Section 922(k) bolsters that goal by punishing "one who possesses a firearm whose principal means of tracing origin and transfers in ownership—its serial number—has been deleted or made appreciably more difficult to make out." *U.S. v. Adams*, 305 F.3d 30, 34 (1st Cir. 2002). It is self-evident that the purposes § 922(k) are to prophylactically preserve a system of serial numbers and "to assist law enforcement by making it possible to use the serial number of a firearm recovered in a crime to trace and identify its owner and source." *Marzzarella*, 614 F.3d at 98.

Early legislatures and Founders did not shy away from regulating the trade and movement of firearms.[4] Firearms were not to be sold to certain people. "[T]he colonies of Massachusetts, Connecticut, Maryland, and Virginia all passed laws in the first half of the seventeenth century making it a crime to sell, give, or otherwise deliver firearms or ammunition to Indians." *Teixeira v. County of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017) (citing "Acts of Assembly, Mar. 1657-8" *in The Statutes at Large: Being a Collection of All the Laws of Virginia, from the First Session*

---

[3] John Dickson & Son began using serial numbers as early as 1812. *Serialization*, NRA Museums, https://www.nramuseum.org/media/940941/serialization-date%20of%20manufacture.pdf, pg. 2371 (last visited March 20, 2023). Charles Lancaster began using serial numbers in 1826. *Id.* at 2378. Boss & Company, Limited began using serial numbers in 1830. *Id.* at 2358. The Springfield Armory began using serial numbers after 1865. *Firearm Serial Numbers*, National Park Service, https://www.nps.gov/spar/learn/historyculture/firearm-serial-numbers.htm (last visited March 20, 2023). Winchester began in 1866. *Serialization*, at 2392. Some manufacturers did not begin using serial numbers until the dawn of the twentieth century, including Browning (1903), A.H. Fox (1907), and L.C. Smith (1907). *Id.*

[4] Even George Washington had all Continental Army firearms marked with an insignia to prevent theft. E. Wayne Carp, TO STARVE THE ARMY AT PLEASURE: CONTINENTAL ARMY ADMINISTRATION AND AMERICAN POLITICAL CULTURE, 1775-1783, 66-67 (1984).

*of the Legislature, in the Year 1619*, at 441 (1 William Waller Henning ed., 1823); *The Public Records of the Colony of Connecticut, Prior to the Union with New Haven Colony, May, 1665*, at 49, 182 (1 J. Hammond Trumbull ed., 1850); "Assembly Proceedings, February-March 1638/9" in *Proceedings and Acts of the General Assembly of Maryland, January 1637/8—September 1664*, at 103 (William Hand Browne, ed., 1883); *Records of the Governor and Company of the Massachusetts Bay in New England* 196 (Nathaniel B. Shurtleff, ed., 1853)).

In colonial Virginia, straying into an Indian town or more than three miles from an English Plantation, while possessing more firearms than needed for personal use, was a crime.[5] *Teixeira*, 873 F.3d at 685 (citing "Acts of Assembly, Mar. 1675–76" *in The Statutes at Large: Being a Collection of All the Laws of Virginia, from the First Session of the Legislature, in the Year 1619*, at 336–37 (2 William Waller Henning ed., 1823)). Colonial Virginia also required "the recording not only of all new arrivals to the colony, but also 'of arms and munitions.'" Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 L. & CONTEMP. PROBS. 55, 76 (2017) (citing *Virginia Acts of Assembly*, Feb. 24, 1631). "A 1652 New York law outlawed illegal trading of guns, gun powder, and lead by private individuals." *Id.* (citing "Ordinance of the Director and Council of New Netherland Against Illegal Trade in Powder, Lead and Gunds [sic]" in *New Netherland by Private Persons*, 1652 N.Y. Laws 128).

The Founders also implemented militia laws that required militiamen and other householders to bring their guns to "the muster field twice a year so that militia officers could record which men in the community owed guns." Robert H. Churchill, *Gun Regulation, the*

---

[5] The fact that the legislatures were willing to consider mere possession as presumptively establishing the crime of selling arms to Native Americans reflects that, if available, the colonial legislatures may have welcomed the ability to identify each firearm and its path from owner to owner.

*Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 L. & HIST. REV. 139, 161 (2007) (citing "An Act for regulating and governing the Militia of the Commonwealth of Massachusetts," 1793, in *Massachusetts Session Laws*; "An Act more effectually to provide for the National Defense, by establishing an Uniform Militia throughout the United States" 1792, in *Laws of the United States of America* (Philadelphia: Richard Folwell, 1796), 2:92). Additionally, regulations in New Hampshire, New Jersey, and Rhode Island authorized door-to-door firearm censuses. *Id.* at 161 n.54 (citing "Order of the Governor and Council, March 28, 1667" in *Records of the Colony of Rhode Island and Providence Plantations* (Providence: A. Crawford Greene and Brother, 1857) (John Russell Bartlett, ed.) 2:196; "An Act for the better regulating of the Militia of this Province," 1747, McCord, *Statutes at Large*, 9:645; "An Act for the regulating, training, and arraying of the Militia," 1781, *New Jersey Session Laws*.

Despite some differences between these historical regulations and § 922(k), founding-era legislatures were concerned about the illegal trading and movement of firearms, while also concerned about preventing the sale of firearms to those deemed dangerous—a shared purpose of § 922(k). Comparing § 922(k) with relevant historical analogues reveals that the historical analogues often tackled these problems in ways more onerous to a citizen than § 922(k) does. Before the advent and widespread implementation of serial numbers, there was no identifying mechanism to track the transfer of discrete firearms. Rather, legislatures had to craft broad, often crude, prohibitions on the firearms trade in order to keep firearms out of the hands of those deemed dangerous or to track a firearm's ownership and movement. After a transaction ended, and

9

without a unique identifying number, it would have become increasingly hard to trace the firearm and whose hands it had passed through.

Section 922(k) reflects Congress' intent to utilize and protect serial numbers, to enable a more fine-tuned approach to regulating the trade and movement of firearms. Any perceived burden of not possessing a firearm with an obliterated serial number, or not removing the serial number from a firearm, is quite negligible when compared to the burden imposed by gun censuses, mustering to a field, or wholesale prohibitions on trade with certain individuals or in certain areas. *See Holton*, --- F. Supp. ----, 2022 WL 16701935, at *4; *see also Serrano*, 2023 WL 2297447, at *13; *Tita*, 2022 WL 17850250, at *8. For the reasons above, the United States has satisfied its burden to "affirmatively prove that its firearms regulation is part of the [or analogous to a] historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen* at 2127. Accordingly, the Court finds that § 922(k) is "consistent with the Second Amendment's text and historical understanding" and is therefore constitutional. Thus, the Defendant's motion to dismiss should be denied.

## DISCUSSION OF THE *PRO SE* MOTION

Mr. Bradley filed a *pro se* motion to dismiss in May of 2022, prior to arrest and appointment of counsel. (Document 6). Counsel was not appointed until nearly eight (8) months later, and the Defendant was not arrested until February 2023. In his motion, Mr. Bradley argued that the indictment against him should be dismissed on Fourth Amendment grounds. To date, defense counsel has shown no indication of adopting the *pro se* motion. Given the unusual posture and timing of the *pro se* motion, Counsel should clarify Defendant's position by either withdrawing or refiling the same.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Bruen-Based Motion to Dismiss* (Document 29) be **DENIED**. The Court further **ORDERS** that the Defendant either **WITHDRAW or REFILE**[6] the *pro se Defendant's Motion to Dismiss Charges of Felon in Possession and Possession of a Firearm with an Obligated Serial Number* (Document 6).

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: March 23, 2023

*[Signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[6] If the Defendant chooses to refile, the motion and arguments in support may be modified as Counsel sees fit..

11